UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
IPCON COLLECTIONS LLC,                          :
        Plaintiff,                              :
                                                :   **MEMORANDUM DECISION**
v.                                              :
                                                :   7:10-cv-9012 (VB)
COSTCO WHOLESALE CORP.,                         :
        Defendant.                              :
----------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Ipcon Collections LLC commenced this action against defendant Costco Wholesale Corp. seeking damages for injuries suffered by plaintiff's purported predecessor-in-interest ES Electrosales Leadsinger Co., Ltd. ("Leadsinger") because of defendant's alleged conduct. Pending before the Court are (1) defendant's motion to dismiss (Doc. #5); (2) plaintiff's cross-motion to stay arbitration contained within its opposition to the motion to dismiss (Doc. #15); and (3) defendant's amended motion for sanctions (Doc. #14).[1] For the following reasons, defendant's motion to dismiss is granted, plaintiff's cross-motion to stay arbitration is denied, and defendant's amended motion for sanctions is denied.

## BACKGROUND

        For the purposes of ruling on the motions, the Court reviews the factual allegations of the complaint as well as the parties' evidentiary submissions.

        Ipcon is the assignee and holder of all rights related to certain claims by Leadsinger against Costco. Leadsinger is a seller of a variety of electronic products, including karoake

---

[1] Defendant filed a motion for sanctions (Doc. #10) which was never withdrawn and remains pending. In light of the amended motion for sanctions, the initial motion is denied as moot.

1

systems.  Costco is a national retailer.

From October 2005 to September 2008, Costco sold Leadsinger's products on a temporary basis at a number of Costco's locations through Costco's "Roadshow" program pursuant to various agreements between Costco and Leadsinger.  These agreements each contained a provision, substantially similar in each agreement, which provided:

> All claims and disputes that (1) are between Vendor and Costco Wholesale or either's subsidiaries, parents, affiliates, officers, directors and/or employees, and (2) arise out of or relate to the Agreement Documents or their subject matter, interpretation, performance or enforcement, or any other agreement, transaction or occurrence between Vendor and Costco Wholesale (including without limitation any tort or statutory claim) . . . shall be arbitrated under the Commercial Arbitration Rules of the American Arbitration Association . . . , in English at Seattle, Washington, before one neutral arbitrator . . . who shall be a member of the AAA's Large Complex Case Panel . . . .[2]

During the Roadshow program, a vendor (such as Leadsinger) is given approximately ten days to sell its products at various Costco locations at displays specifically showcasing the vendor's products.  To participate in the Roadshow program, Costco demanded Leadsinger use a staffing company known as Crossmark.  The products are shipped and purportedly consigned to Costco, but not purchased or received in inventory by Costco.  Product sales are captured and vendors are paid on the sales which occur during the scheduled dates.  Leadsinger believed payments would be made thirty days after the sales were captured.

Costco represented that, before payments would be made, unsold product would be

---

[2] Although plaintiff does not mention any written agreement in its complaint, the Court is permitted to review it on this motion as the agreements form the basis of the parties' dispute and plaintiff implicitly relies upon them in its complaint.  Plaintiff does not claim these agreements do not exist or that this language is not representative of the provision in each agreement.

returned to Leadsinger.  Nonetheless, Costco deducted the value of unsold products from the payment to Leadsinger for the products sold.  Costco then retained the unsold products instead of returning them to Leadsinger.

In addition, Costco sold consigned products outside the Roadshow dates, and such sales were not captured by Costco's accounting.  Therefore, they were not reported to Leadsinger, and no payment was made on account of them.  Costco did not inform Leadsinger that its accounting system could not properly account for consigned products sold outside the Roadshow program.

Further, Costco treated all Leadsinger products received, although on consignment, as if owned by Costco.  This treatment was concealed from Leadsinger and was used to induce Leadsinger into sending products to Costco for the Roadshow program.  It resulted in the sale of Leadsinger products at salvage prices to wholesalers and bulk dealers.

Moreover, Costco maintained its accounting system so as not to provide any method by which a Roadshow location could charge back only the freight costs of the products returned to Leadsinger without deducting the entire value of the product.  Thus, the value of the goods remaining after Roadshows was improperly deducted from payments to Leadsinger.

Finally, products which had been sold by Costco to retail customers were inappropriately accepted for return by Costco, which resulted in further improper deductions from the vendor accounts.  This was due to Costco's allegedly-"liberal" return policy.  These returns included returns for products which functioned properly and met consumer expectations at the time of sale.

Plaintiff alleges Costco fraudulently induced Leadsinger to enter into the agreements with Costco because Costco hid its true intention not to adhere to the terms of the agreements. Plaintiff asserts claims for fraud; fraudulent returns and misaccounting; conversion; negligent bailment; unfair trade practices – fraud; and fraud in the inducement.

**DISCUSSION**

**I.      Motion to Dismiss**

Defendant moves to dismiss this action in favor of an arbitration set to proceed in Seattle, Washington.  Its arguments rest on the arbitration provisions in each agreement.

Congress enacted the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), to codify a strong national policy in favor of arbitration.  Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable.

Under the FAA, arbitration agreements are to be construed as any other contracts would be. Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010).  The goal of the FAA is to "ensure that private arbitration agreements are enforced according to their terms." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011) (quoting Volt Info. Scis. v. Bd. of Trs., 489 U.S. 468, 478 (1989)).  Courts confronted with a dispute between parties subject to arbitration must "construe arbitration clauses as broadly as possible." S.A. Mineracao da Tridade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194 (2d Cir. 1984).  "Arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." McMahan Securities Co. v. Forum Capital Markets L.P., 35 F.3d 82, 88 (2d Cir. 1994).  In evaluating a motion under the FAA, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

In order to compel arbitration, the Court must consider two issues: (1) whether the parties agreed to arbitrate; and (2) whether the scope of the arbitration clause covers plaintiff's claims.

Mehler v. Ther Terminix Int'l Co., L.P., 205 F.3d 44, 47 (2d Cir. 2000). Costco asserts that all claims contained in the complaint are within the scope of the various arbitration provisions, and, even if Ipcon charges there was fraud in the inducement, such claim would not negate the arbitration provisions. Ipcon counters that there was fraud in the inducement of the agreements which means there was no meeting of the minds in the formation of the agreements. Such a finding would mean the arbitration provisions are not enforceable.

The Supreme Court has clarified that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006). This decision reversed Second Circuit law which had held that a party could challenge in court, the validity of a contract as void, but not the validity of a contract that was alleged to be voidable. See, e.g., Adams v. Suozzi, 433 F.3d 220, 226-27 (2d Cir. 2005). Courts since Buckeye Check Cashing have noted the death of the void versus voidable distinction and have found that an arbitrator has the authority under the FAA to determine whether a contract is void for lack of mutual assent. See Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 195 (S.D.N.Y. 2006) ("The Supreme Court has recently rejected this distinction, holding that even where the party resisting arbitration claims that the agreement as a whole is void, 'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator.' This principle 'must include contracts that later prove to be void.'") (quoting Buckeye Check Cashing, 546 U.S. at 448 & 449). Thus, Ipcon's reliance on cases older than Buckeye Check Cashing is unavailing and unpersuasive.

The complaint alleges a claim for fraud in the inducement insofar as the complaint asserts defendant lied and misrepresented its intentions to induce Leadsinger to enter into the agreements. See Revak v. SEC Realty Corp., 18 F.3d 81, 91 (2d Cir. 1994) ("[F]raud in the

inducement consists of misrepresentations that cause the maker of the note to enter the transaction."); Restatement (Second) of Contracts, § 164(1) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."); see also General Media, Inc. v. Shooker, 1998 U.S. Dist. LEXIS 10880, at *18 n.6 (S.D.N.Y. July 14, 1998) ("Fraud in the 'inducement' indicates a misrepresentation that goes to the subject matter underlying the transaction, but does not challenge the fact that an agreement of some kind was reached.").[3] This is the crux of Ipcon's opposition to the instant motion. This question was long ago resolved by the Supreme Court when it held "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the making of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). The exception referenced in Prima Paint arises when the parties disagree over whether they agreed to arbitrate specifically, not whether they agreed to the contract as a whole. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. at 445-46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

The Supreme Court in Buckeye Check Cashing distinguished that case from cases in

---

[3] "Fraud in the factum" occurs when a party is tricked into believing the contract provides for something which it does not. See Revak v. SEC Realty Corp., 18 F.3d at 91; see also Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 32 (2d Cir. 1997) ("Proof that a party secretly substituted one type of document for another is evidence of fraud in the execution."). There are no allegations in the complaint that defendant substituted one document for another, or led Leadsinger into believing it was signing a different series of agreements than it actually was.

which the parties challenged whether the plaintiff signed the contract, possessed authority to do so, or had the requisite mental capacity to enter into the agreement.  See Buckeye Check Cashing v. Cardegna, 546 U.S. at 444, n.1.  Those situations are not relevant here.  Plaintiff does not argue that Leadsinger did not enter into the agreement or that its principal or signatory did not possess the authority or capacity to do so.  This fact makes the Supreme Court's decision in First Options v. Kaplan, 514 U.S. 938 (1995) – a case upon which plaintiff relies – clearly distinguishable.  In that case, the Supreme Court found the plaintiffs were not bound by an arbitration provision because they did not sign the underlying agreement.  There is no argument that Leadsinger did not sign the agreements.[4]

The parties here have signed a series of agreements which mandate that this dispute proceed in arbitration.  Plaintiff's arguments that there was no "meeting of the minds" is simply irrelevant.  The parties agreed on terms and signed contracts memorializing such agreement.  That Costco allegedly did not intend to fulfill its obligations does not mean the contracts were not signed; instead, it means there was fraud in the inducement.  That issue is the appropriate province of the arbitrator.

The FAA applies even in a situation where a court dismisses a case and the case proceeds to arbitration at which an arbitrator finds the contract to be void.  As the Supreme Court noted in Buckeye Check Cashing:

> It is true, as respondents assert, that the Prima Paint rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void.  But it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly

---

[4] The Court notes there are no arguments that the assignment relieved plaintiff of Leadsinger's obligations under the arbitration provisions.

> enforceable. Prima Paint resolved this conundrum – and resolved it
> in favor of the separate enforceability of arbitration provisions.

Buckeye Check Cashing v. Cardegna, 546 U.S. at 448-49.

The FAA's language "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) (emphasis in original). In this case, there are signed arbitration agreements. This action is therefore dismissed in favor of the arbitration.[5]

In light of the foregoing, the Court denies plaintiff's cross-motion to stay the arbitration.

**II.     Amended Motion for Sanctions**

Courts have broad discretion in determining whether to impose sanctions. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 407 (1990). "In deciding whether the signer of a pleading, motion, or other paper has crossed the line between zealous advocacy and plain pettifoggery, the court applies an objective standard of reasonableness." United States v. Int'l Bhd. Of Teamsters, 948 F.2d 1338, 1344 (2d Cir. 1991) (citing Bus. Guides, Inc. v. Chromatic Commc'ns, 498 U.S. 533, 549-50 (1991)).

Sanctions under Rule 11 may only be based on issues with the pleadings and other court filings. They are appropriate when (1) the filings are used for an improper purpose; (2) the claims, defenses and legal contentions are not warranted by existing law; (3) the factual

---

[5]     Plaintiff argues in its opposition that this case asks the question "[w]ill an entity with overwhelming economic power escape accountability before the court system after it has implemented a fraudulent scheme, and been complicitous in other fraudulent activities which have destroyed a business, the lives of people working in that business and taken away their homes." However, the Supreme Court's decision in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), makes clear that the parties' respective sizes or economic power are irrelevant in determining whether an arbitration provision should be enforced.

contentions lack evidentiary support; or (4) the denials of factual contentions are not warranted by the evidence. Fed. R. Civ. P. 11(b). Rule 11 does not permit the court "to sanction any action by an attorney or party that it disapproves of. Imposition of sanctions must be based on a pleading, motion or other paper signed and filed in federal court." United States v. Int'l Bhd. of Teamsters, 948 F.2d at 1344. Rule 11 also requires that the party seeking the imposition of sanctions permit the alleged violator twenty-one days to correct its conduct. Lawrence v. Richman Group of CT LLC, 620 F.3d 153, 156 (2d Cir. 2010). This safe harbor provision "functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." In re Pennie & Edmonds LLP, 323 F.3d 86, 89 (2d Cir. 2003).

Defendant contends sanctions are appropriate in this case for four principal reasons. First, plaintiff's complaint did not contain a reasonable, nonfrivolous basis for claiming the relief requested. Second, plaintiff sent the Court[6] a pre-motion letter on March 4, 2011 setting forth its reasons for refusing to submit to arbitration. Defendant argues these reasons were objectively unreasonable and frivolous. Third, plaintiff advanced the arguments made in the pre-motion letter, which is a separate violation from merely setting them forth in submissions to the Court. And fourth, defendants assert sanctions are warranted because of the arguments contained in plaintiff's response to the motion to dismiss.

Plaintiff's complaint is dismissed and its arguments have been rejected by the Court. In addition, its submissions to the Court have not rested on the strongest precedent or arguments.

---

[6] This case was previously assigned to the Honorable Kenneth M. Karas, to whom the pre-motion letters were sent and who conducted a pre-motion conference prior to the filing of the instant motion to dismiss.

Nonetheless, the Court will err on the side of finding that plaintiff's arguments were not objectively unreasonable. Therefore, the Court will not award sanctions in this matter.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (Doc. #5) is GRANTED. Plaintiff's cross-motion to stay the arbitration (Doc. #15) is DENIED, and defendant's amended motion for sanctions (Doc. #14) is DENIED.[7] Defendant's initial motion for sanctions (Doc. #10) is also DENIED.

The Clerk is instructed to terminate the pending motions (Docs. #5, 10 and 14) and to close this case.

Dated: August 24, 2011
       White Plains, New York

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[7] The Court declines the parties' request to hold oral argument.